CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 23 2015
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEFFREY S. HODGES, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No.: 7:12-cv-00362 |
| | ) |
| v. | ) |
| | ) |
| FEDERAL-MOGUL | ) By: Hon. Michael F. Urbanski |
| CORPORATION, et al., | ) United States District Judge |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is a products liability and negligence action arising out of an explosion at an automotive ball-bearing plant in Blacksburg, Virginia. On March 7, 2014, the court granted the defendants' first motions for summary judgment, finding that plaintiffs failed to create a genuine factual dispute regarding the origin of the explosion. ECF No. 149. Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit, which vacated the award of summary judgment and remanded for further proceedings. ECF Nos. 160, 161. The case is now before the court on defendants' second motions for summary judgment.[1] The matter has been fully briefed, and the court heard oral argument on October 23, 2015. For the reasons set forth below, the court **DENIES** the defendants' second motions for summary judgment, ECF Nos. 167, 169, 172, and 173.

---

[1] Specifically, defendant Federal-Mogul Corporation ("Federal-Mogul") has moved for summary judgment (ECF No. 167), defendant Dustex Corporation ("Dustex") has moved for summary judgment (ECF No. 169), defendants Kirk & Blum Manufacturing Company and K&B Duct (collectively "Kirk & Blum") have moved for summary judgment (ECF No. 172), and defendants Q-Tech Equipment & Services of the Carolinas, LLC, Carrington Engineering Sales Co., and Carrington Engineering Sales (collectively "Carrington") have moved for summary judgment (ECF No. 173).

I.

Plaintiffs Jeffrey S. Hodges, Tommy Lee Bonds, and John Paul Spangler are employees of LCM Corporation, a hazardous waste disposal firm. On December 31, 2010, plaintiffs sustained serious injuries in an explosion that occurred while vacuuming aluminum dust out of ductwork at Federal-Mogul's plant in Blacksburg, Virginia. Plaintiffs and defendants have very different views both as to how the accident happened and the legal responsibility for the accident.[2]

Plaintiffs claim the explosion on December 31, 2010, occurred outside the Federal-Mogul plant and that safety devices at the plant failed to prevent the explosion from traveling back inside the facility and burning the plaintiffs. Plaintiffs point to the alleged failure of two safety devices: a baghouse and a back blast damper. The baghouse is located adjacent to the Federal-Mogul plant, and is designed to collect and store the volatile aluminum dust from inside the plant via a series of overhead ducts. The back blast damper is designed to keep the contents of the baghouse from returning to the plant via the ductwork. Plaintiffs assert that the combined purpose of these two safety devices is to contain any explosion outside the plant and prevent the resulting fireball from entering the plant through the ductwork and injuring workers inside.

In sum, plaintiffs allege an "outside-in" theory of the explosion. Plaintiffs argue that the explosion occurred in the baghouse located outside the plant, which caused a fireball to spread inside the plant via the ductwork, past the failed back blast damper, where it eventually engulfed the plaintiffs. Plaintiffs contend that the baghouse, designed and manufactured by Dustex, had an undersized blast door causing explosive pressure to build up inside the baghouse to the point where it exploded.[3] Plaintiffs also contend that the steel used in the back blast damper, designed and manufactured by Kirk & Blum, was too thin and the welding on the damper too weak to keep the

---

[2] As both this court and the Fourth Circuit have previously detailed the factual background of this case, this opinion will only summarize the relevant facts.

[3] Plaintiffs also sued Q-Tech Equipment & Services of the Carolinas, LLC and Carrington Engineering Sales for their role in the sale of the baghouse and back blast damper.

2

explosion from entering the plant from the baghouse. Plaintiffs finally fault Federal-Mogul for its role in the design of these safety devices associated with the dust collection system, negligent use of the system, and failure to clean the baghouse and ductwork prior to the duct cleaning.

Based on these allegations, plaintiffs argue that the proximate cause of their injuries was the failure of the undersized blast door and the insufficiently weak back blast damper to withstand and contain the explosion of the baghouse. Plaintiffs rest their case primarily on the eyewitness testimony of Jeffrey Hodges, who claims he saw a fireball come towards him from beyond the back blast damper, and expert testimony about the alleged defects in the two safety devices.[4] This testimony, plaintiffs posit, creates a genuine issue of material fact precluding summary judgment.

For their part, defendants attribute the accident entirely to plaintiffs and their employer, LCM. Defendants argue that plaintiffs' ungrounded vacuuming operation inside the plant on December 31 produced static electricity, which caused the aluminum dust to ignite inside the ductwork. Defendants claim the resulting explosion spread both out of the open ductwork and inside the plant, where it burned the plaintiffs, and down the opposite direction through the ductwork and into the exterior baghouse which, consequently, exploded. If the explosion originated inside the plant, not in the baghouse, and was sparked by the plaintiffs' own actions, defendants argue that plaintiffs cannot establish proximate cause, that plaintiffs' conduct was the intervening and superseding cause of their injuries, and that plaintiffs' claims are barred by the doctrines of contributory negligence, assumption of risk, and unforeseeable misuse.

---

[4] Plaintiffs offer Martin Schloss as their design expert. Schloss will testify to the alleged defects in the design and manufacture of the baghouse and the back blast damper. While the court previously excluded plaintiffs' expert opinions as to the cause and origin of the explosion at the Federal-Mogul plant, it made no ruling on Schloss' defect opinion. See ECF No. 149. Moreover, the court intends to revisit its prior order excluding plaintiffs' cause and origin expert testimony in light of the Fourth Circuit's decision in this case.

3

## II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non moving party "must set forth specific

4

facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non moving party must show that "there is sufficient evidence favoring the non moving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the Court must determine that no reasonable jury could find for the non moving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

### III.

Defendants first contend that there is no genuine dispute on the question of proximate cause. Assuming, as they must, that there is some evidence showing that the fire originated in the baghouse, defendants claim that the plaintiffs still must offer some evidence showing how or why the explosion started in order to survive summary judgment. Absent evidence explaining the cause of the fire, defendants argue the plaintiffs cannot create a genuine factual issue concerning whether the alleged defects in the design of the baghouse and back blast damper proximately caused the plaintiffs' injuries. The court disagrees.

As a federal court sitting in diversity, the court must apply the substantive law and choice-of-law rules of the forum state. See Salve Regina Coll. v. Russell, 499 U.S. 225, 226 (1991) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The accident occurred in Virginia, so Virginia law applies. See Fry v. Commonwealth, 231 Va. 370, 376, 345 S.E.2d 267, 272 (1986). Under Virginia law, "[t]he proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Beverly Enterprises–Virginia v. Nichols, 247 Va. 264, 269, 441 S.E.2d 1, 4 (1994) (quoting Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143,

5

147 (1980)); accord Williams v. Le, 276 Va. 161, 167, 662 S.E.2d 73, 77 (2008); Beale v. Jones, 210 Va. 519, 522, 171 S.E.2d 851, 853 (1970). There may be multiple "proximate causes" of a single event, and a subsequent proximate cause "may or may not relieve a defendant of liability for his negligence." Williams, 276 Va. at 167, 662 S.E.2d at 77. Because causation often depends on the "particular facts of each case," the issue of proximate cause is ordinarily a question of fact for a jury, not a question of law for the court. Rascher v. Friend, 279 Va. 370, 377, 689 S.E.2d 661, 666 (2010); Kellermann v. McDonough, 278 Va. 478, 493, 684 S.E.2d 786, 793 (2009); Moses v. Southwestern Va. Transit Mgmt. Co., 273 Va. 672, 679, 643 S.E.2d 156, 160 (2007); Jenkins v. Payne, 251 Va. 122, 128, 465 S.E.2d 795, 799 (1996); Brown v. Koulizakis, 229 Va. 524, 531, 331 S.E.2d 440, 445 (1985); Armstrong v. Rose, 170 Va. 190, 200, 196 S.E. 613, 616 (1938).

In this case, the parties offer two competing theories for the explosion. Defendants propose an "inside-out" theory, with the explosion starting near the plaintiffs' vacuuming operation inside the plant, and then moving through the ductwork to the baghouse located outside the plant. In contrast, plaintiffs advocate an "outside-in" theory in which the explosion began in the baghouse, forcing a fireball to travel through the ductwork, past the back blast damper, and into the plant facility, where it eventually engulfed the plaintiffs. Both theories have some support in the factual record, which would generally preclude summary judgment.

However, defendants allege that the plaintiffs' "outside-in" theory is fatally flawed because it cannot explain why the explosion occurred in the first place. In support, defendants rely heavily on the opinion of the Virginia Supreme Court in Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc., 271 Va. 206, 624 S.E.2d 55 (2006). Saxon Shoes arose from the ashes of a shoe store destroyed by fire, allegedly at the hands of a cleaning crew. Id. at 209, 624 S.E.2d at 57. In that case, the plaintiff's cause and origin expert opined that the fire started when a member of the cleaning crew disposed of a cigarette in a trash box. Id. at 213–17, 624 S.E.2d at 59–61. The Virginia Supreme

6

Court found this expert opinion inadmissible as a matter of law, holding that it was based on assumptions unsupported by the evidence. Id. at 217, 624 S.E.2d at 61. Having excluded the expert's opinion on causation, the Virginia Supreme Court found no evidence linking the cleaning company to the fire, and subsequently reversed a judgment in favor of the plaintiff. Id. at 218–19, 624 S.E.2d at 62. Under this precedent, defendants claim that plaintiffs must show not only that the explosion originated in the baghouse, but also how and why that explosion started in order to survive summary judgment on the issue of proximate cause.

However, plaintiffs' theory of liability in this case is different from the theory advanced in Saxon Shoes. Here, plaintiffs claim that their injuries did not arise just from the ignition of the aluminum dust, but rather from the failure of the safety system—consisting of the back blast damper and baghouse—to control the ensuing explosion. Plaintiffs claim they were burned because the defectively-designed baghouse and back blast damper failed to keep the explosion and its resulting fireball outside the plant. Specifically, plaintiffs claim that the baghouse's blast door was undersized, causing inadequate venting of explosive pressure, and that the back blast damper was too thin and inadequately welded, which allowed the fireball to pass through into the interior ductwork. These claims are supported by the expert testimony of Martin Schloss, whose report outlines the various alleged design defects described above. The court finds that this evidence, when considered in the light most favorable to plaintiffs, is sufficient to survive summary judgment on the issue of proximate cause.

Plaintiffs liken their case to one involving a defective automobile airbag. As in the case of a faulty airbag, plaintiffs attribute their injuries not to the operation of the automobile causing it to hit, for example, a tree, but rather the harm caused by the defective operation of the airbag itself. To be sure, negligent operation of the automobile may prevent the driver from recovering on contributory negligence grounds. However, negligent operation it is not necessarily dispositive of the proximate

7

cause issue involving the failure of the safety device to function. The same is true here.

To be sure, plaintiffs' theory depends on proof that the fire and explosion started in the baghouse. Such proof hinges on Hodges's testimony that he observed the fireball emanate from outside the plant and travel down the ductwork towards his location inside the facility. As the Fourth Circuit held in its opinion remanding this case, Hodges's testimony is adequate, on its own, to create a genuine dispute over whether the fire originated in the baghouse. This eyewitness testimony—when combined with Schloss' expert testimony about the alleged defects in the baghouse and back blast damper—precludes summary judgment on grounds of proximate cause.

Cooper v. Ingersoll Rand Co., 628 F. Supp. 1488 (W.D. Va. 1986), also relied upon by defendants, is likewise inapposite. In that case, a repair crew overhauling mining machinery inadvertently failed to properly position a circuit breaker in violation of mine safety regulations, causing the machine's ripper head to start up, catching and trapping a workman. Id. at 1489–90. Under those circumstances, the court held that:

> [T]he direct and proximate cause of Cooper's death was the failure to de-energize the mining machinery before undertaking repairs. The alleged improper design and any negligence possibly involved in manufacture and rebuilding is merely a circumstance of the accident and at best only a remote cause thereof. It is clear, however, that the mandatory safety regulations were not followed and that such negligence was an entirely independent act which the defendants neither brought about nor had control over.

Id. at 1494. Here, in contrast, if the jury concludes that the plaintiffs were burned by an outward-in fireball propelled by the explosion of the baghouse, the failure of the safety system to keep the effects of the explosion from entering the plant is not the sort of "remote" cause found by the court in Cooper.

Finally, Dustex argues that the deposition testimony of plaintiffs' expert, Martin Schloss, exonerates it from any liability. Specifically, Dustex claims that Schloss testified that, even if the blast door on the baghouse had been properly sized to vent the explosion, it could not have

8

prevented a fireball from traveling down the ductwork and overwhelming the defective back blast damper. Because the size of the blast door is the sole defect alleged in the baghouse's design, Dustex claims plaintiffs cannot show that any defect in the baghouse caused their injuries. In response, plaintiffs argue that Dustex misstates Schloss' deposition testimony. Plaintiffs contend that Schloss did not absolve Dustex of liability for their injuries, but rather stated that the fireball in the ductwork was the result of defects in both the baghouse and the back blast damper, and that the alleged defects in the baghouse were sufficient, standing alone, to cause the plaintiffs' injuries. At this stage of the proceedings, the court does not find that Schloss' deposition testimony is so conclusive as to warrant summary judgment for Dustex. Rather, the jury may consider and give whatever weight to this testimony it deems appropriate.

Further, the presence of defects in the back blast damper do not necessarily absolve Dustex of liability for defects in the baghouse. Plaintiffs' theory of liability is one of concurrent negligence resulting from the simultaneous failure of both the baghouse and the back blast damper. Because their injuries were the result of the concurrent failures of both safety devices, Schloss' testimony as to the structural inadequacy of the damper does not allow Dustex to escape liability for failures in the design and manufacture of the baghouse. See Ford Motor Co. v. Boomer, 285 Va. 141, 151, 736 S.E.2d 724, 728 (2013) ("[O]ur law provides a means of holding a defendant liable if his or her negligence is one of multiple concurrent causes which proximately caused an injury, when any of the multiple causes would have each have been a sufficient cause."); Wells v. Whitaker, 207 Va. 616, 622 n.1, 151 S.E.2d 422, 428 n.1 (1966) ("The 'but for' test is a useful tool of exclusion in all but one situation: where two causes concur to bring about an event and either alone would have been sufficient to bring about an identical result."); Carolina, Clinchfield & Ohio Railway Co. v. Hill, 119 Va. 416, 421, 89 S.E. 902, 904 (1916) ("To show that other causes concurred in producing, or contributed to the result is no defense to an action for negligence . . . . Where the negligence of two

9

or more persons acting independently, concurrently results in an injury to the third, the latter may maintain his action for the entire loss against any one or all of the negligent parties. . . .").

For all of these reasons, the state of the evidence in this case does not support the entry of summary judgment on proximate cause grounds.

## IV.

Defendants next argue that the negligence of LCM in the vacuuming operation constitutes an intervening cause precluding any finding of negligence or breach of warranty against them. An event may have more than one proximate cause. Under certain circumstances, a proximate cause may also be a superseding cause that severs the link of proximate causation between the initial negligent act and the resulting harm, thereby relieving the initial tortfeasor of liability. Williams, 276 Va. at 167, 662 S.E.2d at 77; Jenkins, 251 Va. at 128–29, 465 S.E.2d at 799; Coleman v. Blankenship Oil Corp., 221 Va. 124, 131, 267 S.E.2d 143, 147 (1980). However, the intervening negligent act "must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." Atkinson, 256 Va. at 454, 508 S.E.2d at 71–72 (quoting Panousos v. Allen, 245 Va. 60, 65, 425 S.E.2d 496, 499 (1993) (emphasis omitted)); accord Williams v. Joynes, 278 Va. 57, 63, 677 S.E.2d 261, 264 (2009); City of Richmond v. Gay, 103 Va. 320, 324, 49 S.E. 482, 483 (1905). Not every intervening cause is a superseding cause. Kellermann, 278 Va. at 493, 684 S.E.2d at 793–94. Instead, a superseding cause of an injury "constitutes a new effective cause and operates independently of any other act, making it and it only the proximate cause of injury." Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966) (internal citation omitted).

Defendants argue that even if they were negligent or breached an implied warranty in the design and maintenance of the back blast damper and baghouse, LCM's (and plaintiffs') actions in setting the ductwork ablaze with the static electricity generated by the ungrounded vacuuming

10

operation constitutes a superseding cause exonerating them of liability. At this stage, the court cannot agree. The court is compelled on summary judgment to view the facts in the light most favorable to plaintiffs and draw all reasonable inferences in their favor. See Glynn, 710 F.3d at 213; McAirlaids, 756 F.3d at 310. Here, plaintiffs offer some evidence that they were burned by an "outside-in" explosion in the baghouse, which propelled a fireball from the outside of the plant to the inside of the plant. Viewing such evidence in the light most favorable to plaintiffs, the court cannot conclude at this procedural stage that the sparks from LCM's negligent operation of the vacuum operated independently of, and entirely superseded, the negligent design and maintenance of the back blast damper and baghouse. In other words, if the jury finds that the fireball was indeed propelled inwards from the exploding baghouse, it cannot be said, as a matter of law, that the negligent design and maintenance of the back blast damper and baghouse was so divorced from the causation of the injuries that it did not contribute to plaintiffs' injuries.

## V.

Finally, defendants argue that plaintiffs were contributorily negligent as a matter of law. Contributory negligence consists of the independent elements of negligence and proximate causation. Rascher, 279 Va. at 375, 689 S.E.2d at 664. "When a defendant relies upon contributory negligence as a defense, he has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent, but also that his negligence was a proximate cause, a direct, efficient contributing cause of the accident." Karim v. Grover, 235 Va. 550, 552, 369 S.E.2d 185, 186 (1988). As stated above, issues of negligence and proximate causation are typically questions of fact to be decided by the jury. Moreover, any finding on contributory negligence in this case depends entirely on which theory of the accident the jury finds to be supported by the evidence. Plaintiffs claim they were injured by an explosion of the baghouse. Defendants disagree, and claim the explosion occurred first in the ductwork after the plaintiffs' negligent operation of a vacuum caused a buildup

11

of static electricity. Both theories are supported by sufficient evidence in the record to create a genuine dispute for trial. Therefore, in light of the dueling theories as to where the explosion first occurred, the court concludes that factual disputes preclude summary judgment on grounds of contributory negligence.[5]

At the same time, plaintiffs assert that they can never be found contributorily negligent because they were following the orders of their employer, LCM. Plaintiffs rely principally on Jones v. Meat Packers Equip. Co., 723 F.2d 370 (4th Cir. 1983), for this argument. However, the court does not read Jones to establish such a categorical legal rule. The plaintiff in Jones, a newly hired sanitation worker at a meat packing plant, was injured while cleaning a large mixer-blender. Id. at 372. Although the stop button on the machine was in the off position, the mixer-blender suddenly activated, injuring the plaintiff, who subsequently filed suit against the manufacturer. Id. The trial court submitted the issue of contributory negligence to the jury, even though plaintiff followed her employer's instructions when cleaning the mixer-blender and there was no evidence that she knew that the mixer-blender might activate while in the off position. Id. The Fourth Circuit reversed, finding that the evidence could not support a jury instruction on contributory negligence. Id. at 372–73.

However, in concluding that the issue of contributory negligence should not have been submitted to the jury, the Fourth Circuit did not hold that employees following their employer's instructions can never be found contributorily negligent. Rather, the issue in Jones turned on whether "the danger [was] so apparent that no reasonable person would encounter it." Id. at 372

---

[5] The same factual disputes also preclude summary judgment on the related defenses of assumption of risk and unforeseeable misuse. While contributory negligence and assumption of risk are defenses to the plaintiffs' negligence claims, they do not apply to a breach of warranty claim. See Brockett v. Harrell Bros., Inc., 206 Va. 457, 463, 143 S.E.2d 897, 902 (1965); Wood v. Bass Pro Shops, Inc., 250 Va. 297, 300–01, 462 S.E.2d 101, 103 (1995). Only the defense of unforeseeable misuse applies to a breach of warranty claim. See Featherall v. Firestone Tire and Rubber Co., 219 Va. 949, 964, 252 S.E.2d 358, 367 (1979). Regardless, the court finds that material disputes of fact prevent summary judgment on grounds of assumption of risk or unforeseeable misuse.

(citing Norfolk & Western R.R. v. Ward, 90 Va. 687, 692, 19 S.E. 849, 850 (1894)). There was no evidence in that case to suggest that the defect in the mixer-blender machine was apparent to the plaintiff. Nor was there evidence that she had been warned that the machine could suddenly start up even though the stop button had been pushed. On these facts, the Fourth Circuit found a jury instruction on contributory negligence to be improper.

Here, however, the court cannot conclude at this stage that no issue of fact exists as to contributory negligence. In contrast to the newly-hired plaintiff in Jones, defendants note that plaintiffs in this case were experienced hazardous waste disposal workers fully aware that the vacuum equipment was ungrounded and was producing static electricity in the explosive ductwork environment. Moreover, an issue of fact exists as to whether the employer, LCM, authorized and approved the attachment of PVC pipe extension to the vacuum cleaner, accentuating the static charge. As such, based on the record developed to date, the facts of the case do not support plaintiffs' argument that the issue of contributory negligence should not be submitted to the jury.

## VI.

For the reasons set forth above, the court will **DENY** defendants' motions for summary judgment, ECF Nos. 167, 169, 172, and 173.

An appropriate Order will be entered.

Entered: 12/23/15

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge